## Case No. 11,244.

### POLAND v. MARYLAND COAL CO.

[S Ben. 347.] 1

District Court, S. D. New York. Jan., 1876.[2]

CHARTER PARTY—TIME OF VOYAGE.

A vessel was chartered for a series of voyages from Georgetown, D. C., to Weymouth, Mass., "from the 2d day of May, 1874, until the 1st day of November, 1874." She made several voyages under the charter and arrived at Georgetown on October 19th, when the master reported to the charterers' agent and demanded a cargo, which the agent refused to give under the charter, unless the master would agree to finish his trip before November 1st. This the master declined to do. By special agreement the agent gave him a cargo at a less rate of freight than that stated in the charter, without prejudice to the rights of either party. This cargo he carried, and he then filed this libel against the charterers, to recover the difference of freight. *Held*, that the master, under this charter, was not entitled to claim the cargo unless the voyage was to be completed before November 1st; and, as the master declined to agree to do this, the charterer was justified in refusing to furnish the cargo.

[This was a libel by Nathan W. Poland against the Maryland Coal Company for freight.]

Scudder & Carter, for libellant.
Alexander & Green, for respondents.

[On appeal to the circuit court, the decree of this court was affirmed. Case No. 11,245.]

## Case No. 11,245.

### POLAND v. MARYLAND COAL CO.

[14 Blatchf. 519.] 1

Circuit Court, S. D. New York. June 21, 1878.[2]

CHARTER PARTY — CONSTRUCTION — DUTY TO FURNISH CARGO—LAY DAYS.

1. Where a vessel was chartered for "a series of voyages" from G. to W., from May 2d to November 1st, with coal as a cargo, each trip, for a compensation per ton of coal, the charterer was not bound to furnish a cargo, at G., on October 19th, unless there was reasonable cause to believe that the voyage could be completed, in the usual way, by November 1st.

2. As the charter specified what lay days should be allowed for loading, the charterer was not required to furnish a cargo, except at his own convenience, during such lay days.

[Appeal from the district court of the United States for the Southern district of New York.

[This was a libel by Nathan W. Poland against the Maryland Coal Company to recover balance of freight. From a decree of the district court dismissing the libel (Case No. 11,244), libellants appeal.]

George A. Black, for libellants.
Charles B. Alexander, for respondent.

WAITE, Circuit Justice. On May 2d, 1874, the schooner Lizzie Heyer, then being in the port of New York, was chartered by the respondent "for a series of voyages from Georgetown, D. C., to Weymouth, Mass., below all bridges, from the second day of May

----

1 [Reported by Robert D. Benedict. Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]
2 [Affirmed in Case No. 11,245.]

1 [Reported by Hon. Samuel Blatchford, Circuit Judge. and here reprinted by permission.]
2 [Affirming Case No. 11,244.]

until the first day of November, 1874, charterers to have the privilege of sending the vessel two trips to Boston in lieu of two to Weymouth." The respondent engaged "to provide and furnish to the said vessel a full and complete cargo of coal, under deck, each trip, and to pay * * *. for the use of said vessel, during the voyage aforesaid, two dollars and sixty-five cents ($2.65) per ton, of 2,240 lbs., delivered at Weymouth. Freight payable on delivery of cargo. If to Boston, two dollars and fifty cents ($2.50) per ton, and three cents per ton per bridge." The lay days allowed by the charter for loading and discharging were "at the rate of one day, Sundays and legal holidays excepted, for every hundred tons of cargo," commencing twenty-four hours after the arrival of the vessel in port, and notice thereof to the respondent, or its agents or consignees. The carrying capacity of the vessel was upward of six hundred tons. Under this charter the vessel made one voyage to Boston, three to Weymouth, and one, by special arrangement, between Baltimore and Weymouth. She sailed from New York to Georgetown, May 3d, and arrived May 10th; was loaded, and sailed for Boston, May 13th, arriving there May 24th; sailed for Georgetown, May 30th, where she arrived June 6th; sailed for Weymouth, June 10th, arriving June 19th; sailed again for Georgetown, July 1st, and arrived July 8th; sailed again for Weymouth, July 15th, and arrived July 26th; sailed for Georgetown, July 31st, and arrived August 7th; sailed for Weymouth, August 9th, arriving August 19th. From Weymouth, by special agreement, she then made a voyage to Baltimore and back, sailing from Weymouth, September 4th, and arriving at Baltimore, September 8th, and sailing from Baltimore, September 10th, and arriving at Weymouth, October 1st. She then sailed from Weymouth, October 10th, and arrived at Georgetown, October 19th. On her last arrival at Georgetown, she reported to the respondent, and demanded a cargo under the charter. At that time the ruling market rate of freight to Boston was one dollar and fifty cents per ton. The respondent offered to put a cargo on board, under the charter, for Boston, if the vessel would agree to deliver it at that place by November 1st. This agreement the libellant refused to make, but he offered to receive a cargo under the charter and enter upon the performance of his voyage. The respondent then offered to load her, and if she arrived in Boston by November 1st, pay the charter price, but, if after that date, the market price. This also was refused by the libellant. On October 24th, the respondent offered to load the vessel for Boston at one dollar and sixty cents per ton, "without reference or prejudice to claims of either party under charter, leaving claims for separate settlement, the captain to stipulate." This proposition was accepted October 26th. She was accordingly loaded under this arrangement, and sailed October 27th, arriving in Boston November 26th. She was detained on her voyage ten days at Hampton Roads, on account of an accident to her captain. The freight actually paid under this last shipment was $961.60, while, at the charter rate, it would have amounted to $1,502.50. This libel was filed to recover the difference, being $540.90.

The charter party being for "a series of voyages," the libellant could not be required to receive, or the respondent to furnish, a cargo under the charter, unless there was reasonable cause to believe that the voyage could be completed, in the usual and ordinary way, by November 1st.

The respondent could not be required to furnish a cargo, except at its own convenience, during the lay days allowed by the charter.

After allowing the respondent such time as it was entitled to, under the charter, for loading the vessel, there was no reasonable probability that a voyage to Boston could be completed by November 1st.

The libel should be dismissed. See Poland v. Maryland Coal Co. [Case No. 11,244] S Ben. 347.